JUSTIN MICHAEL CREEL, BY AND THROUGH HIS GUARDIAN AD LITEM, VICTOR H. MORGAN, JR., PLAINTIFF V. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, EMPLOYER, DEFENDANT

No. COA01-1058

(Filed 6 August 2002)

**Tort Claims Act— negligent acts of licensed foster parents— respondent superior—lack of jurisdiction**

The Industrial Commission did not err by dismissing based on lack of jurisdiction a case concluding that the North Carolina Department of Health and Human Services (DHHS) may not be

---

held liable under the Tort Claims Act for the alleged negligent acts of licensed foster parents under the doctrine of respondeat superior, because: (1) no employment relationship existed between the foster parents and DHHS, meaning the doctrine of respondeat superior cannot be applied to hold DHHS vicariously liable for the acts of the foster parents; and (2) there is no need to address the degree of control and supervision that DHHS maintained over the manner in which the details of the work performed by the foster parents was executed since it is undisputed that no employment relationship existed between the parties.

Appeal by plaintiff from an order entered 18 June 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 22 May 2002.

*Brumbaugh, Mu & King, P.A., by Richard A. Mu, for plaintiff-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Grady L. Balentine, Jr., for defendant-appellee.*

HUNTER, Judge.

The issue presented by this case is whether, pursuant to the doctrine of *respondeat superior*, the North Carolina Department of Health and Human Services ("DHHS") may be held liable under the Tort Claims Act for the alleged negligent acts of licensed foster parents. The Industrial Commission answered the question in the negative. We affirm.

## I. Facts and Procedural History

Burnest and Rita Gamble are licensed foster parents. Justin Michael Creel ("the child") was placed by the state with the Gambles on 21 October 1996. On 17 March 1997, while under the foster care of the Gambles, the child was seriously injured by a lawnmower operated by Mr. Gamble. The child, through his guardian *ad litem*, Victor H. Morgan, Jr. ("the claimant"), instituted this action against DHHS pursuant to the Tort Claims Act, N.C. Gen. Stat. §§ 143-291 to -300.1

150 N.C. App. 127, 131, 562 S.E.2d 583, 586 (2002), this case is distinguishable. In *Brown*, the respondent's conduct occurred during an examination and at the end of the examination, not while the teacher was conducting class as in the case *sub judice. See id.* at 127-28, 562 S.E.2d at 584. Moreover, in *Brown*, neither the respondent's language nor his behavior was as egregious or severe as respondent's language in this case. Accordingly, *Brown* is not controlling here.

(2001). The "Claim for Damages Under Tort Claims Act" ("the Claim") alleges that the Gambles were agents of DHHS at the time of the accident and that the child's injuries arose as a result of the negligence of the Gambles while acting within the scope of their agency. On this basis, the Claim alleges that DHHS should be held liable for the Gambles' alleged negligence under the doctrine of *respondeat superior*, and that the claimant is entitled to compensatory damages in the amount of $150,000.00. DHHS answered and denied liability.

The parties stipulated to a bifurcated proceeding, with the issues of jurisdiction and negligence to be determined first, followed by a determination of damages if necessary. Deputy Commissioner Morgan S. Chapman dismissed the claim for lack of jurisdiction based upon the determination that the Gambles were not agents of DHHS and that the claim therefore did not fall under the Tort Claims Act and the Industrial Commission did not have jurisdiction. The claimant appealed, and the Full Commission entered an order affirming the dismissal. The claimant appeals to this Court.

## II. Analysis

Pursuant to the Tort Claims Act, the state (or an agency of the state such as DHHS) may be sued directly in tort if (1) the "claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority," and (2) the claim arose "under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." N.C. Gen. Stat. § 143-291(a); *Gammons v. N.C. Dept. of Human Resources*, 344 N.C. 51, 54, 472 S.E.2d 722, 724 (1996). Here, the claimant does not contend that the Gambles were officers, employees, or involuntary servants of DHHS; rather, the claimant specifically alleges that the Gambles were "agents" of DHHS.

Generally, liability of a principal for the torts of his agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is ratified by the principal; or (3) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business. *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 491, 340 S.E.2d 116, 121, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986). In the first two of these three situations, liability is based upon traditional agency principles; in the third of these three situations, liability is

CREEL v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[152 N.C. App. 200 (2002)]

based upon the doctrine of *respondeat superior*. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70, at 502 (5th ed. 1984) (hereinafter *Prosser*); 27 Am. Jur. 2d *Employment Relationships* §§ 459-60, 896-98 (1996). Here, the claimant specifically contends that DHHS should be held liable based upon the doctrine of *respondeat superior*; the claimant does not argue that DHHS should be held liable based upon traditional agency principles.[1] Thus, we limit our analysis to whether DHHS should be held liable under the doctrine of *respondeat superior*. In analyzing a claim pursuant to the Tort Claims Act, we are mindful that the Act is in derogation of the state's sovereign right to be immune from suit, and that, therefore, the Act should be strictly construed. *See Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997).

As noted above, the Claim here is based upon the specific theory that the Gambles were "agents" of the state and that DHHS may be held vicariously liable for their alleged negligent acts based upon the doctrine of *respondeat superior*. The doctrine of *respondeat superior* generally allows an employer (sometimes referred to as a "principal" in this context) to be held vicariously liable for tortious acts committed by an employee (sometimes referred to as an "agent" in this context) acting within the scope of his employment. *See* Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts* § 23.20, at 454 (2d. ed. 1999) (hereinafter *North Carolina Law of Torts*). Fundamental to the application of the doctrine of *respondeat superior* is the requirement that there be an employer-employee relationship between the parties. *See North Carolina Law of Torts* § 23.20, at 455; *Prosser* § 70, at 501; 27 Am. Jur. 2d *Employment Relationships* § 461.

Here, it is undisputed that no employment relationship existed between the Gambles and DHHS. The Commission found as fact that "[t]he Gambles volunteered to serve as foster parents" and that "[t]hey were not paid for their efforts but received a sum from the county each month to pay the expenses associated with keeping a

---

1. We note that, even if the claimant had argued that DHHS should be held liable based upon traditional agency principles, such argument would be without merit. Under the law of agency, a "principal" and an "agent" may agree to establish a fiduciary relationship whereby the principal grants authority to the agent to represent the principal and act on his behalf. *See* 3 Am. Jur. 2d *Agency* § 1 (1996). Once an agency relationship exists, the principal may be held liable for the agent's tortious act if it was authorized or ratified by the principal. *See* 3 Am. Jur. 2d *Agency* § 262-63. Here, there is no evidence in the record tending to show that there existed an agency relationship between the Gambles and DHHS, or that, even if such a relationship existed, the alleged negligent acts in question were either authorized or ratified by DHHS.

child, including food, housing, clothing, and toys." The claimant has not assigned error to these findings, and they are therefore binding on appeal. *Long v. Morganton Dyeing & Finishing Co.*, 321 N.C. 82, 84, 361 S.E.2d 575, 577 (1987). As there is no dispute that an employment relationship did not exist, the doctrine of *respondeat superior* cannot be applied to hold DHHS vicariously liable for the acts of the Gambles.

In his brief, the claimant fails to address the fact that the Gambles were not employees of DHHS. Instead, the claimant argues that the Gambles were agents of DHHS "because [DHHS] exercised complete control and supervision over" the Gambles' foster care of the claimant. This argument is misplaced. The degree of control and supervision retained by one party over the details of the work to be performed by a second party is relevant to determining whether that second party may be categorized as an "employee" or, in the alternative, an "independent contractor." *See Hayes v. Elon College*, 224 N.C. 11, 15, 29 S.E.2d 137, 139-40 (1944) (cited in *Vaughn v. Dept. of Human Resources*, 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979)); *see also North Carolina Law of Torts* § 23.20, at 454. This distinction takes on significance in certain cases because an employer may be held vicariously liable under the doctrine of *respondeat superior* for a tortious act committed by an "employee" but not for a tortious act committed by an "independent contractor." *See Vaughn*, 296 N.C. at 686, 252 S.E.2d at 795; *see also North Carolina Law of Torts* § 23.20, at 454; *Prosser* § 71, at 509. However, the distinction is not significant where, as in the present case, it is undisputed that no employment relationship exists between the parties; in such situations, the second party is neither an "employee" nor an "independent contractor." Thus, there is no need in the present case to address the degree of control and supervision that DHHS maintained over the manner in which the details of the work performed by the Gambles as foster parents were to be executed.

Based upon existing law, we conclude that the doctrine of *respondeat superior* is not applicable here, and that, as a result, the Commission was without jurisdiction to hear this claim seeking to hold DHHS liable under the Tort Claims Act for the alleged negligent acts of the Gambles.[2] For the reasons stated herein, we affirm the Industrial Commission's dismissal for lack of jurisdiction.

2. Several states have enacted legislation to indemnify foster parents as employees of the state. For example, Illinois explicitly includes as employees under their State Employee Indemnification Act "foster parents . . . when caring for a Department ward." 5 Ill. Comp. Stat. Ann. 350/1(b) (West 2002).

Affirmed.

Judges WYNN and CAMPBELL concur.